IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICHARD JAMES LAMONS,
    Plaintiff,

vs.                                                Case No.:  5:13cv373/RS/EMT

MISTY JORDAN, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Richard James Lamons commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 (doc. 1).  Mr. Lamons is proceeding pro se and in forma pauperis (*see* doc. 4).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that dismissal of this action is warranted.

I.    BACKGROUND

Mr. Lamons brings this civil rights action against employees of the Florida Department of Children and Families ("DCF") and Children's Home Society of Florida ("CHS") (docs. 1, 16).  He claims that Defendants removed his child from his custody in violation of his due process rights under the Fourteenth Amendment (*id.*).  To provide context to Plaintiff's allegations and claims, the court will set forth the Florida law governing dependency proceedings.

In Florida, a dependency proceeding is preceded by an investigation and filing of a dependency petition by DCF, the State's child protective services agency.  *See* Fla. Stat. §§ 39.01–.0139, 39.301–.308, 39.501–.507.  The parent has the right to be represented by counsel

at each stage of the proceedings.  *Id.* § 39.013.  An arraignment hearing must be held no later than 28 days after the child has been sheltered by order of the court or within 7 days after the date of filing a dependency petition, for the child's parent or legal custodian to admit, deny, or consent to (in the nature of a "no contest" plea) a finding that the child is dependent (meaning, the child has been abandoned, abused, or neglected by the child's parent or parents or legal custodian, *see id.* § 39.01(15)(a)) based upon the allegations in the dependency petition.  *Id.* § 39.506.  If the parent admits or consents to a finding of dependency, the court shall conduct a disposition hearing within 15 days after the arraignment hearing.  *Id.*  If the parent does not admit or consent to a finding a dependency, an evidentiary adjudicatory hearing must be held within 30 days.  *Id.* §§ 39.506, 39.507.  If the facts alleged in the dependency petition are proven in the adjudicatory hearing and the child is determined to be dependent, the state court enters an order adjudicating the child dependent.  *Id.* § 39.507.  The court then holds a disposition hearing within 30 days.  *Id.* §§ 39.507, 39.521.  DCF must prepare a written case plan and a predisposition study and file these items with the court no later than 72 hours before the disposition hearing.  *Id.* § 39.521.

The case plan is a document that "follows the child from the provision of voluntary services through any dependency, foster care, or termination of parental rights proceeding or related activity or process."  Fla. Stat. § 39.01(11).  The case plan must be developed in a face-to-face conference with the parent.  *Id.* § 39.6011.  It must include, among other items, a description of the permanency goal for the child, a description of the type of home or institution in which the child is to be placed, a discussion of the safety and appropriateness of the child's placement, the services to be provided to the parent and the tasks the parent must complete (including the time frames for achieving the objective of the case plan), the services that the child needs and will receive, and a description of the visitation rights of the parents.  *Id.* §§ 30.6011, 39.6012.  After the case plan has been agreed upon and signed by the parties, a copy of it must immediately be given to the parties.  *Id.* § 39.6011.  The case plan must be approved by the court.  *Id.* § 39.603.  It may be amended if all the parties agree and the court approves, or after a hearing it may be amended by the court on its own motion or that of a party, based on competent evidence that demonstrates the need for an amendment.  *Id.* §§ 39.6013, 39.603.  If at the hearing on the case plan, which occurs in conjunction with the

disposition hearing, the court determines that any of the elements required in the plan are not present, it can order DCF to amend the plan to include what is necessary. *Id.*

The court may change the temporary legal custody or the conditions of protective supervision at a post-disposition hearing, without the necessity of another adjudicatory hearing. Fla. Stat. § 39.522. A child who has been placed in the child's own home under the protective supervision of an authorized agent of the department may be brought before the court by the department, upon the filing of a petition alleging a need for a change in the conditions of protective supervision or the placement. *Id.* If the parent denies the need for a change, the court must hold a hearing. *Id.* After such hearing, the court must enter an order changing the placement, modifying the conditions of protective supervision, or continuing the conditions of protective supervision as ordered. *Id.* In cases where the issue before the court is whether a child should be reunited with a parent, the court must determine whether the parent has substantially complied with the terms of the case plan to the extent that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by the return of the child to the home.

The state court has continuing jurisdiction over a dependency case and reviews the child's status at least every 6 months. Fla. Stat. § 39.701. Prior to the review hearing, DCF must furnish to the court a written report that includes, among other items, a description of the placement of the child, its appropriateness, the safety of the child, the number of placements, documentation of the efforts of all parties to comply with the case plan, the number of times the child's educational placement has been changed, and copies of all medical and psychological records that support the terms of the case plan. *Id.* At the review hearing, the court considers the child's situation, including whether there has been compliance with the case plan, the appropriateness of the child's current placement, and whether the child is in a setting that is family-like and consistent with the child's best interests and special needs. *Id.* The court must return the child to the custody of the parents at any time it determines that they have substantially complied with the case plan, if the court is satisfied that reunification will not be detrimental to the child's safety, well-being, and physical, mental, and emotional health. *Id.*

The dependency statute expressly states, "Time is of the essence for permanency of children in the dependency system." Fla. Stat. § 39.621(1). No later than 12 months after the date that the

child is placed in shelter care, the court must conduct a judicial review to plan for the child's permanent placement. *Id.* Any party to the dependency proceeding who is affected by an order of the court may appeal to the appropriate district court of appeal. *Id.* § 39.510.

In the instant case, Mr. Lamons alleges his child was reunified with him in March of 2013, but remained in medical foster care until May of 2013, when Lamons completed his case plan (doc. 1 at 3).[1] Mr. Lamons alleges that in July of 2013, after he returned home from the grocery store, Defendant Misty Jordan, a DCF caseworker, and two police officers arrived at his home (*id.*). Caseworker Jordan advised Mr. Lamons that she was investigating an anonymous report to the child abuse hotline that Lamons was observed outside a grocery store smoking a cigarette while his girlfriend held the child, and the child was without his required oxygen tank (*id.*). Mr. Lamons alleges he informed Caseworker Jordan that the child was never without his oxygen tank (*id.*). Lamons alleges he allowed Jordan and the police officers to enter and search his home (*id.* at 4).

Mr. Lamons alleges his child attended medical day care while in his custody (doc. 1 at 4; doc. 16 at 4). He alleges the day care nurses checked the child's vital signs daily and reported the results to him (Lamons) at the end of each day (doc. 16 at 4). Mr. Lamons alleges that on August 1, 2013, while his child was in medical day care, Caseworker Jordan contacted him and advised that she and Defendant Theresa Jordan, a case manager with CHS, were removing the child from his custody and placing the child in a medical shelter home (doc. 1 at 4; doc. 16 at 4–5). Lamons states he asked Jordan the reason for removing the child, and she responded that she was not permitted to give him any information except that the removal was directed by Defendant Bethaine Milford, a case manager with DCF (*id.*). Lamons alleges Defendants Jessica Johnson and Debra Stem, both of whom are supervisors with DCF, directed Milford's decision (doc. 16 at 5). Lamons alleges Defendant Jessica Gibson, a supervisor with CHS, also directed the decision to remove the child from his custody (doc. 16 at 5). Lamons alleges a shelter hearing was held, at which the only evidence adduced came from DCF social workers (doc. 1 at 5). He alleges the court ordered that the child be placed in a shelter home (*id.*). He also states that Caseworker Jordan and Lisa

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

Case No.: 53:13cv373/RS/EMT

Hutcheson, an attorney for DCF, filed a dependency petition on August 16, 2013, alleging the following:

> a. On August 1, 2013, the Department was unable to ensure the safety of the child in the care of the Father. The court granted the Department's verified petition for placement in shelter on August 2, 2013.
>
> b. Since reunification in March of 2013, the Father has not consistently provided the child with the appropriate and necessary medical treatment for his lung condition. Most importantly, the Father has failed to provide the child with the required oxygen twenty four hours per day seven days per week, as ordered by the child's pulmonologist. The Father has also been smoking which is in violation of both the court's orders and the recommendations of the physicians. The Father has smoked both in the presence of the child and outside the presence of the child's health and well being [sic].
>
> c. The lack of oxygen in the child [sic] blood [ ] could lead to brain damage.
>
> d. At the last two appointments with the minor child's pulmonologist, Dr. Okan Elidemir, the Father had no oxygen for the minor child. When asked where the child's oxygen tanks were, the Father responded that they were in the vehicle that had transported him to the appointment. The Department's transporter confirmed that the Father had no oxygen in the vehicle.
>
> e. The Father's continued smoking of cigarettes anywhere near the minor child places the child at substantial risk of physical harm in that it is a fire hazard to smoke within four feet of an oxygen tank and it exposes the child to toxic and potentially deadly fumes based on the child's medical state.
>
> f. In addition, the Father also allowed his paramour to be a caregiver for the child in violation of the court's order, as she is not medically trained to care for the minor child. The Father has also failed to ensure the child's regular attendance at medical day care. Finally, the Father has been smoking. This constitutes medical neglect pursuant to Fla. Stat. 39.01(44) because the Father's actions place the minor child at significant risk of harm.
>
> g. The Father has also engaged in violent behavior in the presence of the minor child which resulted in law enforcement being called to the residence on July 3, 2013, this is harm pursuant to Fla. Stat. 39.01(32).
>
> h. The minor child is at significant risk of harm if placed back in the care of the Father.

(doc. 1 at 7–8).  Mr. Lamons alleges he was "barred" from physical contact with his child for over two (2) months (doc. 1 at 5; doc. 16 at 4–5).  He alleges his child was placed more than fifty (50) miles from his home, and he is able to visit the child only via "webcam" (doc. 1 at 5; doc. 16 at 4–5).

Mr. Lamons claims that the following conduct by Defendants violated his due process rights under the Fourteenth Amendment:  (1) refusing to conduct a meaningful investigation prior to removing the child from his home, (2) seizing his child without a warrant or probable cause, and in the absence of exigent circumstances, (3) refusing to "engage reasonable efforts and services to maintain the child in his home," (4) knowingly including false statements in the dependency petition, (5) failing to inform the court of "exculpatory" information, including the fact that Defendants had no concerns for the child's health or safety when they visited his home on more than one occasion, and the child was physically and emotionally healthy at the time of removal, (6) failing to provide him sufficient notice of the allegations in the dependency petition such that he could prepare for the hearing, and (7) failing to advise him of his rights, thus preventing him from being heard in a meaningful way (doc. 1 at 5, 8–11).  Mr. Lamons additionally asserts state law claims, including violation of his state civil rights, intentional infliction of emotional distress, and negligence (*id.* at 11–14).

Mr. Lamons seeks monetary damages, declaratory relief, and an order "voiding" the dependency petition and requiring Defendants to apologize (doc. 1 at 15; doc. 16 at 7).

II.     ANALYSIS

This cause of action is subject to dismissal pursuant to the Younger abstention doctrine.  This doctrine, announced in Younger v. Harris, 401 U.S. 37 (1971), reaffirmed the "strong federal policy against federal-court interference with pending state judicial proceedings."  Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982).  Abstention is not in order simply because a pending state-court proceeding involves the same subject matter.  *See* New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed .2d 298 (1989) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts.").  The Supreme Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief.  *See id.* at 368.

Younger exemplifies one class of cases in which federal-court abstention is required:  When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.  Although Younger itself involved a parallel, pending state criminal proceeding, the Supreme Court has extended abstention to particular state civil proceedings that are akin to criminal prosecutions.  The "pathmarking decision" applying Younger to bar federal relief in certain civil actions is Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975).  *See* Sprint Commc'n, Inc. v. Jacobs, — U.S. —, 134 S. Ct. 584, 588, 187 L. Ed. 2d 505 (2013).  In Huffman, Ohio officials brought a civil action in state court to abate the showing of obscene movies in Pursue's theater.  Because the State was a party and the proceeding was "in aid of and closely related to [the State's] criminal statutes," the Court held Younger abstention appropriate.  420 U.S. at 604.

In New Orleans Pub. Serv., Inc., the Court had occasion to review and restate its Younger jurisprudence.  491 U.S. at 368.  That case addressed and rejected an argument that a federal court should refuse to exercise jurisdiction to review a state council's ratemaking decision.  "[O]nly exceptional circumstances," the Court reaffirmed, "justify a federal court's refusal to decide a case in deference to the States."  *Id.*  Those "exceptional circumstances" exist, the Court determined after surveying prior decisions, in three types of proceedings.  First, Younger precluded federal intrusion into ongoing state criminal prosecutions.  *See* New Orleans Pub. Serv., Inc., 491 U.S. at 368.  Second, certain "civil enforcement proceedings" warranted abstention.  *Id.* (citing, *e.g.*, Huffman, 420 U.S. at 604); *see also* Middlesex Cnty Ethics Comm., 457 U.S. at 433–34 (applying Younger to bar federal court from entertaining lawyer's challenge to a state ethics committee's pending investigation of the lawyer; state ethics committee's hearing was plainly "akin to a criminal proceeding" in that it was preceded by an investigation and formal complaint, an agency of the State initiated the hearing, and the hearing's purpose was to determine whether the lawyer should be disciplined for failing to meet the State's professional conduct standards).  Third, federal courts refrained from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  New Orleans Pub. Serv., Inc., 491 U.S. at 368 (citing Juidice v. Vail, 430 U.S. 327, 336 n.12, 97 S. Ct. 1211, 51 L. Ed. 2d 376

(1977); Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 13, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)).[2]  The Supreme Court has not applied Younger outside these three "exceptional" categories, and in Sprint Commuc'n, Inc., 134 S. Ct. at 588, the Supreme Court held that the three categories define Younger's scope.

Here, the injunctive relief sought by Mr. Lamons, specifically, an order "voiding" the dependency petition filed after the dependency court placed the child in a shelter home, would interfere with the dependency court's orders in furtherance of its ability to perform its judicial functions under Florida's dependency statutes.  So long as the dependency proceeding is pending in the state courts, proper respect for the ability of the Florida courts to resolve Plaintiff's challenges to the dependency process mandates that the federal court stay its hand.[3]

---

[2] In Juidice, plaintiffs, who were held in contempt by state court judges for disobeying subpoenas to appear in supplemental proceedings brought by judgment creditors in an attempt to collect a judgment, brought a class action seeking injunctive relief.  The Supreme Court held that a state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, was of sufficiently great import to require application of the abstention doctrine.  430 U.S. at 335–36.

In Pennzoil Co., Pennzoil obtained a jury verdict of $10.53 billion in a state court suit alleging that Texaco tortiously induced a third oil company to breach a contract to sell its shares to Pennzoil.  481 U.S. at 4.  While the state civil action was pending, Texaco filed an action in federal district court alleging the state court proceedings violated its rights under the Constitution and various federal statutes.  *Id.* at 6.  Texaco asked the federal court to enjoin Pennzoil from taking any action to enforce the judgment, and the court entered a preliminary injunction doing so.  *Id.*  The Supreme Court held that there was little difference between the state interests present in Juidice (that is, the State's interest in forcing persons to respond to the court's process on pain of contempt) and the State's interest in forcing persons to transfer property in response to a court's judgment—both cases involved challenges to the processes by which the State compels compliance with the judgments of its courts.  *Id.* at 13–14.  The court concluded, "Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained.  So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand."  *Id.* at 14.

[3] The date of filing of the federal complaint is the relevant date for purposes of determining Younger's applicability.  *See* Pennzoil, Co., 481 U.S. at 17.  The pending state proceedings need not be a single trial that is expected to resolve all issues in a matter.  *See* Liedel v. Juvenile Court of Madison Cnty., Ala., 891 F.2d 1542, 1546 n.6 (citing Moore v. Sims, 442 U.S. 415, 424, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979)).  As previously noted, Mr. Lamons alleges Defendants filed the dependency petition on August 16, 2013, less than three months prior to his commencing this civil rights action on November 4, 2013 (doc. 1 at 6).  As discussed *supra*, the relevant Florida Statutes provide that after a dependency petition is filed the court must hold a hearing if a parent denies the need for a change, and then enter an order changing the placement, modifying the conditions of protective supervision, or continuing the conditions of protective supervision as ordered.  Further, the state court has continuing jurisdiction over a dependency case and reviews the child's status at least every 6 months.  It is thus evident that the dependency proceedings involving Lamons' child were pending at the time Lamons initiated this action.

Case No.: 53:13cv373/RS/EMT

Based upon the foregoing, dismissal of this action is warranted.

Accordingly, it is respectfully **RECOMMENDED**:

1. That this action be **DISMISSED without prejudice** for lack of jurisdiction, pursuant to Younger v. Harris, 401 U.S. 37 (1971).

2. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 26th day of March 2014.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**